case is Rodney K. Sr., Mary K. et al. v. Mobile County Board of Education, Douglas Harwell Jr. et al., 22-11022. And I'll give you all a chance to get set up, but I do know that Mr. Bonner, you are going to proceed first. So, when everybody has gotten settled, and I see that you have reserved five minutes for rebuttal. So, you may approach the podium. May it please the Court. Good morning, Your Honors. I would be remiss if I did not mention the painful irony that right now, as we speak, Rodney K. Jr. is going through surgery, his from this ritualized beating called hazing at the Davidson High School. That's that issue in this case. The district court here must be reversed as the trial court erred in granting qualified immunity as a matter of law and ordering summary judgment when there exists a disputed facts, material facts as to whether the respondent violated the appellant's Fourth and Fourteenth Amendment constitutional rights. The district court must be reversed because it erred in failing to issue and respect the material facts regarding the first prong of the Saucier test pertaining to whether the student's victims had a constitutional right, and particularly the right to be free from seizure and the right to be free from having their bodily integrity violated. But the district court ruled that there was qualified immunity, and under our case law, once the district court determines that one of the two prongs is met, the district court does not have to reach the issue of the constitutional violation. So, you're challenging the award of qualified immunity because you're saying that there are disputes of material fact, correct? Well, that is correct. In the Saucier versus Katz case, state with language that the court must analyze both prongs. To win, you have to win on both prongs. Yes. And so, if you lose on one prong, the court can stop there. And also, Saucier, the Supreme Court came back in Pearson, and we've since acknowledged that the Supreme Court there said you can vary, you could do prong two first rather than prong one. So, I don't think that's a winning argument for you. You may have some winning arguments here. Yeah. So, let's get to the heart of that. Yeah, that is correct. It is totally discretionary. But the winning argument here is that the court completely ignored the material fact set issue. The court did not even define what hazing is. Well, and let's jump in on that. So, you're arguing that hazing in this case, you're citing to our case law dealing with corporal punishment. And all the cases that I'm finding, the teachers themselves are the ones who have inflicted the physical harm on the students. And that is corporal punishment. How do we get from hazing by other students, how has that become corporal punishment by a teacher or a coach or other administrator when, in fact, it's the students who are inflicting the harm here? We get there because hazing is always by the students. We get there because the state actors are engaging in omissions. The coaches are standing by and watching this conduct. They are telling the students to knock it off, Don Mattson, quote-unquote. The state action test, though, requires not just omission or not just looking on. It requires, as I understand it, coercion or strong encouragement. Those are the words from the test that both we and the Supreme Court have said for the state compulsion test. Where is the dispute of material fact? Where is the evidence of coercion or strong encouragement? The strong encouragement is when the coach stands by and watch four or five boys attacking Garrett Betts and Coach Riley, the head coach, comes out and sees, observes this and say, knock it off, dumbasses, and goes back into his office and allows the beating to occur. That is encouragement that this conduct... But the coach said, knock it off. How is stop an encouragement? But saying, knock it off, is not sufficient to prevent this ritualized hazing. That needs to be... But don't the coaches also discipline these kids for the conduct? Yes. The kids were disciplined. That's the kids. That's a separate bucket. But we're talking about what is the obligation, the policy and the procedure for the state actors is omission itself to be sanctioned. But it's not omission. You have the coach saying, stop. You're arguing the coach didn't go far enough because the coach then went into his office and didn't make sure his direction was followed. But you've, again, back to what Judge Luck said, you've got to show you seem to be proceeding under the strong encouragement prong. Where is the strong encouragement? The strong encouragement is that it occurs every football season. It is a pattern in the system. People know, they observe it. In fact, Coach Miller said, everyone goes through it. They know it's happening. You might be arguing tolerance, but how do you get to strong encouragement? And strong encouragement is the fact that there is no mission to have even a procedure to prevent it or a policy. There's no policy at Davidson High School to prevent hazing. There's no procedure. I will say, that is a bit of a leap. Certainly, you're right as a technical matter. In other words, there isn't a hazing policy. But there's certainly a policy of harassment, of physical violence. I mean, the board has that in its policy. It's given to every student. The parent has to sign it. And that was, as I understand, undisputed in the record. But that kind of policy is different from what is described in the Alabama Anti-Hazing Statute, 16.1.23, which specifically say, conduct a beating, encouraging, aiding, and abetting in order to enjoin or in order to initiate it into an organization. Here, in order to go into the football team, you have to go through this ritualized beating that started back at least four years on this record and before. This is not the same as this. This is a ritualized beating and harassing to be initiated into a football team. How many times were these beatings actually reported? Well, they were reported. Garen Betts and one of the resource officer's sons reported it to the principal. They reported it to Copeland. But, I mean, how many, I mean, was it, it's my understanding through reading that it may be two reports, that most of this went largely unreported. Yeah, but reported to whom? You have the principal, to the coaches. You have the director of the athletic department, Coach Fred Riley, observing it. When the supervisors engage in wrongful conduct, that obligates the state. There's no more reporting needed. As to that supervisor, but not that, you don't then impute that to Supervisor 2 and Supervisor 3, do you? No. But you report, since he is a managing agent, you report it, it's imputed to the district. But other coaches also observed these beatings, even after they had taken courses in anti-hazing. They still observed this hazing going on. So this is a particular conduct that is not only All right, let me get past the state action issue for a second and go back to something Judge Branch asked about, and that's the corporal punishment. So under our cases, even where there's teacher violence, we've said there's some pretty extreme stuff that was not unconstitutional, that did not shock the conscience. Specifically, slamming a door in someone's face such that the glass broke and that someone's hand was in the door to push them out, that was found not to be sufficient. Picking someone up and slamming them down four times was found not to be sufficient. Again, some pretty extreme stuff. And I'm having trouble understanding how even with the horrific injury that your client suffered, how that would be sufficient under what we've said and under the shock the conscience standard. Well, because under the shocking of the conscience standard, if you look at constant omission, it doesn't have to be just direct act by the state actor, but the omission is, as you look at the Hassan case, omission is a factor. But remember, we have to take each of your clients individually, and each of your clients had one incident, one that was extreme. So for R.K., for example, that was the one that broke his arm, and then he had the shaving cream incident before. For Mr. Collins, he had the one that was recorded, but there wasn't much else before that. With regard to Mr. Betz, there was the one incident, the one severe incident when he went to the locker room and was told he wasn't supposed to be there. But there wasn't, even those incidents individually, as horrible and as disapprovingly as we all agree they should be, I'm having trouble seeing how they compare to what we've said meets the shocking of the conscience standard. Yes, it meets the shocking of the conscience standard because we're talking about children who have been delivered into the care and custody of the government, and they have to have a duty to protect these students, safety first, and to constantly allow children to be beat means that no child is safe in this culture unless this Court make it a law, establish policy that when a coach sits back and does nothing but allows these ritualized beatings to occur, that that's a violation of the Fourth and Fourteenth Amendments. Thank you. You have five minutes for rebuttal. Thank you. I understand you'll be arguing for five minutes. Yes, Your Honor. May it please the Court, I represent the Board of School Commissioners for Mobile County, sometimes it's called the school board, sometimes it's called the district, but basically it's that entity that oversees the operations of the Mobile County Public School System. I also represent the individual board members, but it appears that of all the claims that were brought by all the plaintiffs that were dismissed by Judge Moore, there only was one out four of the amended complaint, which is styled a Monell claim against the school board. In their brief, the plaintiffs set out the issue as, the plaintiff set out tribal issues of fact that the board maintained a policy that constituted deliberate indifference to the plaintiff's Fourth and Fourteenth Amendment rights. The key issue here is the deliberate indifference. Was there any deliberate indifference on the part of the board? And before you can have deliberate indifference, you have to know that something is amiss. There has to be some type of notice to the board that there is an issue that needs to be addressed, or supervision, or training, or anything. But there is no evidence that the board was aware that there was an issue of hazing at Davidson or at any other institution or school. The plaintiff, when asked what kind of notice does the board have, pointed out to a letter that was sent by a non-plaintiff to the principal at Blount, a conversation that a mother, again not a plaintiff, or the father of a student had with two of the board members. The district judge said that didn't constitute notice because they weren't talking about hazing. They weren't even talking about assaults. They were talking about transfers and harassment because a player transferred improperly. They also talked about, hey, you didn't play my kid in the position that would have allowed him to get an athletic scholarship. None of that would have put the board on notice that there was an issue with hazing. They also talked about one of the plaintiffs, Ms. Collins, who had talked with an assistant principal. Under Monell, isn't it enough that if a customer policy happens so often that it becomes so settled that it essentially takes on a force of law? In other words, if something happens over and over and over and over again, it's attributable as a policy, right? Isn't that what we've said or what the Supreme Court has said? I think you have to read into that that it can happen a hundred times, but if the board doesn't know that it's happening, there has to be something. There has to be discussions in the board. I understand Monell, it's not a matter so much of knowledge, that of policy. In other words, the board either has to enact a policy itself, that's easy, they did it, or something happens so often that it ripens into, we understand, a customer practice of the board. In other words, not everything is written down, but this is just how we do business, right? Again, I think that if it's happening a hundred times and it's not known by the board that it is happening, I don't think it triggers. Board can shield itself simply by closing its eyes to something that happens under its nose a hundred times. That's the position that you're taking? Thank you. I think if you were talking about somebody who's actually there at the school, that has a lot more weight. But if you're talking about five members who are not at the school, and ... Assume for the moment I disagree with your understanding of the law, and assume I get over the state action problem. There is evidence going back to 2005 that this was a regular occurrence. At some point, does that not ripen into a customer practice of the board? I will agree that there is some disputed evidence that indicates that it may go back, but yes. When it comes to disputes, plaintiff wins.  However, there is some evidence that hazing occurred, but nobody reported it. Again, I go, if it happens a hundred times and it's not reported, it's not reported by the parents, it's not reported by the principal, it's not reported by anybody else, how can the board have notice that it needs to do something? Legal position. Thank you, Mr. Carbo. Thank you. Mr. Montgomery. May it please the Court. I'm Monty Montgomery, and I, along with my co-counsel, Allison Ingram, represent retired school board commissioner, I mean retired school board superintendent Martha Peek, retired principal Lewis Copeland, and the football coaches Riley, Copeland, Peek, and Miller. I need to jump in. So there is one thing I need to talk about here, and that is what I'm going to call the bump. What? Okay. You know what I'm talking about, right? Yes. From Mr. Collins. Yes. Right. So as I understand and I read the evidence, Coach Riley pushed out his stomach and bumped into intentionally Mr. Collins. I think viewed in light most favorable to Mr. Collins, I believe that's what the evidence shows. Do you agree with me? Well, I would agree that there is a report from Eric Terry where that statement is made in the interview process, but when Mr. Chapman was given an opportunity to describe the event to me under oath in his deposition testimony, he described an event where Mr. Riley took four steps towards him, Mr. Chapman, I mean, I'm sorry, Mr. Collins took four steps back, and Mr. Collins said, what are you doing, put his hand up and walked around him and left the locker. The problem is, though, he got up and did it for you, right? You took the deposition. Yes. Right. And I'm looking at docket entry 156-48 right now. Yes, sir. And what happened there is he gets up and does it, and then you say, all right, he didn't say anything to you during making that contact or after, and the answer is he didn't say nothing at all. You even acknowledged it as a contact, did you not? I guess apparently I did in the transcript. And then let's look at your brief. In your brief, we say here, Collins, I'm just reading from the brief, Collins sued Coach Riley because he bumped into him with his belly. And then later on at page 34, with the exception of one alleged belly bump by Coach Riley, and then later on again, in this case, Plaintiff Collins is the only party to allege an assault or embattery by Coach Riley. None of the others did. And then, again, if we look at the undisputed statements of fact that you submitted, docket entry 134, it states, quote, it states, Coach Riley's statement of undisputed fact states, quote, LC Jr. alleges Coach Riley purposely bumped him with his belly as LC Jr. was leaving the field house to go to tutoring. Right. Yes, sir. You're 100 percent correct. Those are all absolutely the allegations. Okay. And you agree with me that there's, if you didn't listen to that part of the testimony, he says he poked it out, that he had to take four steps back as a result, they put his arm out, and then he had to walk around him, right? Okay. Let's assume for the moment that red and light most favorable to the plaintiff here that there is contact. That would be State action, would there not? It could be construed to be State action, but we would argue to the court that it doesn't rise to the level of a constitutional violation. Okay. We'll get there. But you agree? He is a State actor. He is acting within his discretionary authority. That is a State act. Okay. So then let's get to the second part. We have a ton of, and this mostly is in the police officer context, I will concede, not in the coach context. There is a ton of case law which seems to suggest that where there is even incidental touching or a blocking by an officer of somebody to get around, we generally view that as a seizure. A very short one, a small one, one that may be not all that compensable, but we generally view that, it seems to me, as a seizure. Do we not? Your Honor, I was, I viewed the bump more in terms of a State law claim, not as a constitutional violation. I looked at it in terms of a, if it's an assault or a battery. It cannot be an assault or battery under State law, and I'm not asking you about that. I'm only asking you of whether that small incidental contact can be viewed in the light most favorable to the plaintiff as a seizure under the Fourth Amendment. Your Honor, it's our position that the, that the only evidence of a contact is apparently my statement after the demonstration of a contact, but Mr. Collins does not actually say in his testimony that there was contact. He gave some demonstration of his belly being poked out, but the only evidence is a statement to the resource officer. There's no actual under oath testimony. Again, assume for the moment that I think that viewed in the light most favorable that there was contact, would that, could that be viewed as a seizure under the Fourth Amendment? And we're not getting, we'll get to qualified immunity in a second. Your Honor, I don't know the answer to that question. Okay. The, if we can, I would, I'd start with the, with the State action, with the, I guess the, understanding Judge Looke, with the exception of the belly bump, there is no other evidence of State action in this case. All of the harm that resulted in the injuries to these, the plaintiffs was directed to them by the, by the other students. And the plaintiffs seem to have abandoned any of the three tests to make a private citizen a State actor in their appellant's brief, although in their reply brief, they do go back and mention either the State compulsion test in order to, to convert these high schoolers into State actors. But there is no action, there is no evidence of direct action, again, we'll take the belly bump outside of this framework after Judge Looke's questioning. There is no conduct, direct conduct by the coaches. There's no direct conduct by the principal. There's no direct conduct by the superintendent. There's no State action. They did not actually apply any corporal punishment. The plaintiff's complaint does not even contain the words corporal punishment. The corporal punishment argument was made for the first time at the summary judgment stage of the case. If the coaches, if this was happening, excuse me, on a regular basis since 2005, and the evidence was that the coaches stood there and watched and did nothing, would that be sufficient encouragement under the State compulsion test? Your Honor, we, we, the, what's actually being argued here is that. I know, I'm asking a hypothetical. I know that's not a fact. Right. So, so, here's what I would say. The, the, the facts of the case, the, the, the testimony, everything in the record shows that over the entire time period alleged in the complaint, Coach Riley was on notice of two events in two years with one of the assailants, okay? And that was Mr. Betz's assault, which the allegation is he watched, said, cut it off, knock it off. I need you to answer my hypothetical. I understand the state of the evidence. My hypothetical is this. If the evidence was that since 2005, hazing regularly went on in the football program and the coaches stood by and watched as it happened, would that be sufficient encouragement? No, sir. It's still, it's still acquiescence. You don't think at some point that when coaches are standing by and it's happening every single year, that at some point that ripens into or turns into something else other than acquiescence? It could be, but those aren't the facts in this case, Your Honor. Okay. I understand they're not. Right. I'm asking a hypothetical. I think, I think there, there's always going to be, I guess, that line somewhere. It's just like when you, when you do the 14th Amendment analysis about whether or not it's, it's objectively, obviously extreme, corporal punishment. There's always going to be a line. And if you actually had testimony or facts in this case where every day it happened and every day the coaches sat there and laughed or watched, it's not like a, I think they're a fight club case. You know, you have fight clubs and prisons and things like that. That is not the case here. So I do think that there is eventually a line that can be crossed. It's just not in this case. So what separates this case from that is that the coaches were saying, stop, and as Judge Yes. I mean, the, the, the, if, if this case turns on the facts, the facts are that by the time you get to the Rodney Kim event, which is the last event, the, you have Coach, like Coach Riley aware of two events in two years with, and that's the Betts and Sylvester. You have Coach Riley? In Fairness Counsel, there's more than that. And that's because you're right as to the plaintiffs, so your statement is correct. But there is evidence in this record that Coach Riley saw a lot more than that. No, sir. With regard to folks in the football program. Your Honor, the only ones that, that, that Coach Riley is alleged to have seen is the eighth grade event that, that Trey Betts saw when he was on his visit, Trey Betts' event. He walked up on the Devin Sylvester event after it happened. He did, he saw the George Morris event, put it, immediately stopped it with Coach Pope and they ran them the next day. The Rashard event, nobody saw. The Corian Westry event, nobody saw. Yeah, but the, the, he was eating ice cream and then went off and had. Jeremiah Chapman. The, the allegation is that, the allegation was that as he walked out of the, the testimony was as he walked out of the building and was going into the gym, he, Jeremiah Chapman says a kid, a young man by the name of Kobe, who had not been involved in any events in the record to date, grabbed him from behind and Coach Riley walked in. So, the reality is, the, the ones that they saw are the ones that they walked up on, they stopped. The only allegation with, Mr. Betts says he told them to knock it off, but they didn't. But every other circumstance where they saw it or knew of it, they stopped it. And at the end of the day, that's, that's the issue. There can't be this widespread habit or customer policy when every time they see it, they stop it. I see that I'm out of time, Your Honor. Thank you. Mr. Bonner, you have five minutes. You have to know, Judge Luck, from 2005 until now, there's a policy and a practice of inaction. There's no procedure. When you get into an airplane, there's a policy of safety and there's a procedure where they go by and say, make sure you have your mask on, push your tray up with the oxygen mask. There's a procedure to carry out the policy. Here there was no policy and there was no procedure to allow this ritualized hazing to go on forever. And in spite of the full knowledge under the Alabama statute that says acquiescing into this kind of conduct is a crime, it's a misdemeanor. A crime is based on the Fourth and the Fourteenth Amendments against seizures and against bodily integrity. That's what this knowledge from this statute gives. So there is the Monell here, this policy of inaction. And likewise, the bump was not just one bump, and that's a disputed action. Coach Riley bumped him two or three times with his belly until the kid didn't put his hand up. Those are going to be disputed actions. Those are State contacts. I have to say, we've looked at the relevant portion of the deposition. I'm not sure that is reflected. That may be what you know from your client. Yes. Yes. I'm not sure that's reflected in the deposition. Yes. That is the testimony. Now I encourage this panel to look at the videos. And of course, it's in the records in 156, 47, 162. Look at all the videos, particularly the one of Rodney Kim Jr. Because that's the picture. This hazing has been going on forever. Now, regarding the nutty buddy here, Coach Riley is eating a nutty buddy while his football player is assaulting four or five of his football players as his ritualistic beating has occurred, Jeremiah Chapman, who had been already admitted to go to the Marine Corps. And then he was rejected because of his PTSD. This court must protect the children from this ritualized hazing because it's rampant across the country. That's why 44 states have anti-criminal hazing law and Alabama made it a crime. So it's going to happen again, again, and again to our children, to your children, unless this court makes it a law that is clearly established that this conduct violates the Fourth Amendment of the Constitution's seizure and violates the Fourteenth Amendment right for children to their body integrity. And we submit it with this and ask the court to please reverse the court's ruling. There are many tribal facts in this case, as many holes as there are in Swiss cheese of tribal material facts that should go to the jury. Thank you very much. Thank you. Thank you both. And we have your case under advisement. Thank you. The final case of the day is Isaac Payne.